In the Matter of Clarence WINTERS, Bankrupt.

In the Matter of Anna M. WINTERS, Bankrupt.

Nos. 72 B 1182 (2–A), 72 B 1183 (2–a).

United States District Court, E. D. Missouri, E. D.

April 15, 1975.

James P. Hayes, St. Louis, Mo., Sheldon D. Grand, Curtis Mann, Clayton, Mo., for plaintiff.

## MEMORANDUM AND ORDER

REGAN, District Judge.

Bankrupts, husband and wife, have separately appealed from the orders of Bankruptcy Judge Brauer sustaining the trustee's first specification of objections to their respective discharges and denying a discharge as to each bankrupt under Section 14c(4) of the Bankruptcy Act (Section 32(c)(4), 11 U.S.C.).

On July 17, 1972, petitions in bankruptcy were filed by Clarence and Anna Winters reflecting their hopeless insolvency and the absence of any reasonable expectation of ability to pay any substantial part of their scheduled debts out of future earned income. Theretofore, on September 2, 1971, Mrs. Winters, while driving her husband's automobile, had been injured in a rear-end collision. James P. Hayes was employed on a one-third contingent basis to prosecute their damage claims. Hayes also represents the Winters in the bankruptcy proceedings.

Each bankrupt listed in the schedules an unliquidated claim against the tort feasor, that of Mrs. Winters for her personal injuries and that of her husband for loss

of consortium and for damages to his automobile. Ex delicto unliquidated claims for personal injuries and for loss of consortium do not vest in a trustee in bankruptcy. However, upon the settlement of such a claim, it ceases to be ex delicto and becomes ex contractu, enforcible as such under Missouri law even though the money was not paid at the time the settlement was agreed upon. Ex contractu claims, as well as ex delicto unliquidated claims for damage to property are assignable in Missouri, and hence vest in a trustee in bankruptcy.

■ The Winters' claims were settled for the aggregate gross sum of $9,400, out of which bankrupts received $5,278.33 on July 26, 1973, nine days after bankruptcy. The money was deposited in a joint bank account opened for that purpose about August 1, 1972. Within a short period of time thereafter, most of the money had been withdrawn for such purposes as the purchase of two used motor vehicles (one for Mr. Winters and the other for a daughter-in-law) and a $1,900 two week vacation trip beginning September 28, 1972. About $1,000 of the vacation money was lost in gambling at Lake Tahoe, Nevada.

The initial question for resolution by Judge Brauer was whether the claims had been settled (and thus liquidated) prior to bankruptcy. The evidence reflects that settlement negotiations between Hayes and the liability insurance carrier had been progressing over a period of months until it was orally agreed on June 26, 1972 that if Mrs. Winters could verify the loss of an additional month's wages, the claims would be settled for $9,400. On June 30, 1972, the required verification was furnished. Thereafter, on July 13, 1972, the following communication from Hayes was received by the insurer:

"Dear Boland:

We have been able to settle for $9,400.00 (insurance and property loss) for Mr. and Mrs. Clarence Winters and we would prefer to handle it in one release. Would you please be so kind as to send us the company's draft, together with the release, and I will see that it is properly

executed and remitted to you before the draft is negotiated.

Thank you.

Very truly yours,
HAYES & HAYES
/s/ James P. Hayes
James P. Hayes "

The release and draft were not prepared until July 21. They were signed by the Winters on July 26, 1972, at which time Hayes gave them his check for $5,278.33 together with a Settlement Statement, which included in the "Authorized Deductions" the sum of $700 to Hayes as "costs and fees for Bankruptcies."

In a well-considered opinion (incorporating by reference his earlier opinion on a turn-over order directing that the automobiles be turned over to the trustee), Judge Brauer set forth at length the fact and circumstances on the basis of which he concluded that the claims had been settled prior to bankruptcy by attorney Hayes as the authorized representative of the Winters. We fully concur in his findings. Judge Brauer further found, and we agree, that the conduct of the bankrupts in appropriating to their purposes, without permission from the Bankruptcy Court, the net proceeds of the settlement constituted a transfer, removal, destruction or concealment thereof with intent to hinder, delay or defraud their respective creditors. We believe it is reasonably inferable that the settlement having been agreed upon, the filing of the bankruptcy petitions was timed to precede the execution of the releases and the endorsement of the settlement draft, so that the claims would appear to be unliquidated when the petitions were filed.

In their appeals, the Winters urge, through Hayes, that they would not have authorized him to enter into a binding contract prior to bankruptcy if they had been informed that the proceeds would go to their creditors. There is no evidence substantiating this contention. Hayes did not testify, and we are left to speculate as to what advice he gave to his clients and when it was given. The Winters further argue that the evidence fails to show fraudulent

intent on their part. The intent required is to hinder, delay or defraud their creditors. And, of course, intent is seldom susceptible of direct proof and is ordinarily proved inferentially from the totality of the facts and circumstances.

We are required to accept the findings of the bankruptcy judge unless they are clearly erroneous, giving due regard to his opportunity to judge of the credibility of the witnesses. Upon review of the record, we are convinced that Judge Brauer's findings are not clearly erroneous. Accordingly, the orders of Judge Brauer denying discharges should be affirmed. Judgment will be entered in each case in conformity herewith.